UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

     v.                            CASE NOs. 3:23-cr-98
                                                 3:23-cr-100

IONA K. COATES

## GOVERNMENT'S SENTENCING MEMORANDUM

The defendant, Iona Coates, is being sentenced for two different crimes. First, she acted as a money mule for a fraud that victimized people looking for companionship. Second, she filed false tax returns in an attempt to receive over $1 million in fraudulent tax refunds. Each offense on its own is serious and merits incarceration. Taken together, these offenses provide the Court with a critical insight into Coates's character and her casual willingness to commit crime. Indeed, even after being warned by law enforcement that she was being used in an online romance scam, Coates agreed to be a money mule for another one. A term of incarceration in accord with the Sentencing Guidelines is necessary to reflect the seriousness of Coates's offenses, deter her from crime in the future, and protect the public from further harm.

The parties agree that the PSR correctly calculates a Final Offense Level under the Sentencing Guidelines of 20, corresponding to a range of 33-41 months' imprisonment. Given the seriousness of the defendant's conduct, the

1

United States requests that the Court impose a sentence of imprisonment within the recommended Guidelines range and order the defendant to pay restitution in the amounts of $229,376.26 to the victims of her wire fraud and $186,288 to the Internal Revenue Service, as she agreed to in her plea agreement.

## I.   Factual Background

On July 20, 2023, Coates pled guilty to a one-count Information charging her with wire fraud for her participation in an online romance scam.  A week later, Coates pled guilty to a separate Information charging her with aiding and assisting in the preparation of her false 2017 federal income tax return. The Court consolidated these separate cases for sentencing.

### A.   *Coates's Tax Fraud*

The defendant has owned and operated a bookkeeping and tax return preparation business, Bits & Bytes Accounting Services, since 1993.  Coates has been self-employed as an accountant since 1985, after receiving an associate degree in accounting.  Coates reported that she earned between $110,000 and $150,000 a year through her business.

Instead of being content with this income or seeking additional money through legitimate means, Coates chose to supplement her income by defrauding the United States by filing false tax returns.  Between 2016 and 2021, Coates fraudulently claimed nearly $230,000 in refunds on her personal

tax returns.  Specifically, although Coates reported wages from Bits & Bytes and corresponding tax withholdings from those wages, the reported withholdings were completely false.  In reality, Bits & Bytes never paid withholdings to the Government, which Coates knew as the company's sole owner and operator.  Of the nearly $230,000 of false withholdings claimed, the IRS issued over $185,000 to Coates.

After reaping the fruits of her fraud for a couple years, Coates decided to ramp it up.  In addition to claiming false withholdings on her personal tax returns, Coates created nearly 20 corporate shells whose sole purpose was to file false tax returns claiming fraudulent fuel tax credits.  Coates registered the corporations, opened bank accounts in their names, and negotiated the refund checks on their behalf.  Coates then used the fraudulently obtained refunds for her own benefit.  Between tax years 2017 and 2019, Coates prepared and filed 35 false corporate tax returns that each claimed a false fuel credit.  Despite knowing that these corporations were shells with no right to claim any fuel credits, Coates prepared the returns to make it appear like they were actual operating businesses, for example, by reporting gross receipts and claiming various types of expenses.  Coates claimed over $900,000 of false fuel credits, with the IRS ultimately issuing over $585,000 in refund checks based on these fraudulent returns.

Emboldened by the success of her fraud and ever greedy, Coates egregiously claimed a nearly $14,000 false fuel credit on Bits & Bytes's 2019 corporate return. This credit was based on Coates's claim that she single-handedly purchased over 75,000 *gallons* of fuel for her bookkeeping business. The amount of fuel was blatantly false, as was the notion that she had such excessive transportation costs for a bookkeeping business that she ran from her home.

In total, Coates brazenly claimed over $1.1 million of false credits between her personal returns and the corporate returns. IRS systems caught some of the fraud, but Coates received nearly $775,000 of false refunds from the IRS between 2016 and 2021. Yet, when IRS criminal investigators interviewed Coates in June 2020, she denied any wrongdoing. She claimed that her personal returns were accurate and, to conceal the corporate fraud, provided false identities of the purported owners of the 18 corporate shells. Worse yet, Coates filed another personal tax return claiming false withholdings 6 months after meeting with IRS criminal investigators.

B.    *Coates's Romance Scam*

In the midst of this tax fraud, Coates found time to branch out and participate in a scheme to defraud victims of an online romance scam. In 2020, U.S. Secret Service (USSS) agents began investigating questionable deposits into Coates's bank account. During an interview with USSS agents, Coates

4

explained that she provided her bank account information to individuals that she met online through a dating site.  Coates's account was to be used to receive funds for these individuals.  The agents explained to Coates that the scenario she described was an online romance scam where criminals create fake online identities to convince individuals on dating sites to send them money.  These scammers separately ask a different person on the dating site to receive the money on their behalf and then wire them the money.  In essence, Coates was acting as a money mule for the online scammers. The agents provided Coates with a letter explaining how the scam worked and specifically warned Coates that her continuous participation in the scheme could subject her to criminal prosecution.

Despite this clear warning, Coates continued to facilitate this type of fraud.  Sometime in 2021, Coates began assisting another individual she met on an online dating site with collecting fraudulent proceeds from the victims of a romance scheme.  Between June and September 2021, Coates received nearly $230,000 from five victims and sent this money to the individual she met on the website.  In September 2021, USSS agents interviewed Coates again and she acknowledged that she assisted this person with the collection of the money from the five victims.

## II.   Guidelines Calculation

Although the Guidelines are advisory, sentencing courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 261 (2005). Thus, at sentencing a court "must first calculate the Guidelines range." *Nelson v. United States*, 555 U.S. 350, 351 (2009). Here, the parties agree with the PSR's calculation of the Guidelines range of 33-41 months' incarceration. Coates's intended tax loss of nearly $1.1 million results in a base offense level of 20 for her tax fraud. U.S.S.G. § 2T4.1(H). She receives a 2-level enhancement for being in the business of preparing tax returns and another 2-level enhancement for an offense involving sophisticated means. U.S.S.G. §§ 2T1.4(b)(1)(B) & (b)(2). Coates's fraud loss of nearly $230,000 results in a base offense level of 7, with a 10-level increase for a loss between $150,000 and $250,000. U.S.S.G. §§ 2B1.1(a)(1) & (b)(1)(F).

The combined adjusted offense level starts with the higher offense level from the tax case and adds an additional 1-level increase. U.S.S.G. § 3D1.4. The combined adjusted offense level is 25, but is reduced by 3 levels for the defendant's acceptance of responsibility (if so found by the Court).

Coates also qualifies for the recently added two-level reduction of U.S.S.G. § 4C1.1, thus lowering her final offense level by 2 and her Guidelines recommendation by 25%. The Government does not dispute that this reduction

6

applies according to the terms of that section, but it must be noted that Coates is receiving this benefit by virtue of scheduling.  Coates pled guilty to two entirely separate offenses that are being sentenced at the same time.  However, absent this resource-preserving scheduling decision, Coates would not have qualified for this new reduction for either of her offenses.  The first offense to be sentenced would have had one criminal history point by virtue of the other pending case for sentencing.  U.S.S.G. § 4A1.2(a)(4).  The second offense to be sentenced would also have had at least one criminal history point by virtue of the sentence from the first offense.  U.S.S.G. §§ 4A1.1(a)-(c).  The Government is not arguing for an upward departure based on this calculation, as is potentially justified by the commentary to the new Guidelines Amendments.  *See* U.S.S.G. § 4C1.1 App. Note 2.  However, the Government believes that the benefit Coates is already receiving from the timing of her sentencing is further justification to impose a sentence within the recommend Guidelines range.

## III.   Section 3553(a) Factors

After calculating the Guidelines, a sentencing court must then consider that Guidelines range, as well as the sentencing factors set forth in § 3553(a), and determine a sentence that is appropriate and reasonable for the individual defendant.  *Nelson*, 555 U.S. at 351; *see also United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).  With respect to § 3553(a)'s enumerated factors, most relevant here are the nature and circumstances of the offense and the need for

7

the sentence to reflect the seriousness of the offense, the history and characteristics of the defendant, and the need for the sentence to provide adequate specific and general deterrence.   § 3553(a)(1), (a)(2)(A), (a)(2)(B) (a)(2)(C).  As explained below, based on those factors, a sentence within the Guidelines range is reasonable.

### A.   Nature, Circumstances, and Seriousness of the Offense

Coates committed not one but two serious offenses, both of which deserve a term of incarceration.  Five victims felt the very real and significant loss of nearly $230,000.  Despite receiving a clear warning about the harm her actions were causing, Coates continued to facilitate online scammers by funneling them money.  Coates was specifically put on notice of her role in the fraud and warned that her continued participation could subject her to prosecution. These five victims were seeking companionship and romance.  Instead, and thanks to Coates's help, they were defrauded of a substantial sum of money.

Second, the substantial damage Coates did to the Treasury cannot be taken lightly either.   Year after year Coates deliberately included false information on her personal tax returns, despite clearly knowing that Bits & Bytes did not withhold and pay over any employment taxes.  Emboldened by her success, Coates branched out into creating shell corporations to use for corporate returns that claimed substantial false credits.  Critically, Coates's criminal conduct was not limited to an isolated event.  To the contrary, the

conduct spanned multiple years despite plenty of opportunities to cease her criminal behavior.  Indeed, Coates is a serial fraudster.

A large component of this country's tax system is voluntary reporting and payment.  For such a system to work, it depends on an inherent trust with taxpayers.  The defendant violated this trust by filing false tax returns that she knew claimed false credits.  Tax fraud is a serious crime and violates the most basic covenant between citizens and the government. *See United States v. Zukerman*, 897 F.3d 423, 428 (2d Cir. 2018) ("[t]ax crimes represent an especially damaging category of criminal offense" which "strike[] at the foundation of a functioning government'"); *United States v. Carlson*, 498 F.3d 761, 764 (8th Cir. 2007) ("[t]ax offenses, in and of themselves, are serious offenses") (cleaned up).  Put simply, tax fraud constitutes theft from the pockets of every taxpaying citizen of this nation.  A functioning government relies on its citizens and residents to report timely, completely, and honestly all taxes they owe, which is why Congress has made it a criminal offense to file false tax returns. As Justice Oliver Wendell Holmes famously observed, "[t]axes are what we pay for a civilized society . . . ." *Compania General de Tabacos de Filipinas v. Collector of Internal Revenue*, 275 U.S. 87, 100 (1927) (Holmes, *J.*, dissenting).

The scope of Coates's fraud is an important consideration.  It spanned over half a decade.  It involved multiple complex steps: the registration of

multiple shell corporations, the opening of nominee bank accounts solely to receive fraudulent refund checks, and the conversion of the corporate checks to the defendant's personal use. As set forth in the PSR, Coates should receive a two-level enhancement for committing this fraud through the use of sophisticated means. This enhancement, to which Coates did not object, underscores the seriousness and scope of her conduct.

Overall, Coates's fraud was serious, repeated, and widespread. Federal law enforcement agents put her on notice that her fraud would not be tolerated. Despite this clear notice, Coates felt that she was above the law. Her crimes were committed over a prolonged period, and involved a significant degree of planning and intentionality, which demonstrate a blatant disregard for the law and a willingness to harm others for personal gain. Therefore, a term of incarceration in accord with the Guidelines is warranted.

### B.    The Defendant's Personal History and Characteristics

Unlike many defendants who appear before this Court, Coates grew up in a stable home with a loving family and no history of drugs or abuse. Coates has an associate degree in accounting and is a successful entrepreneur who has owned and operated her own accounting business for over thirty years. Coates has the sophistication to understand the gravity of the choices that she made to commit these serious offenses. Coates did not commit hot-blooded crimes of passion. Instead, she was motivated by greed. She enriched herself

10

and victimized others over a long stretch of time after being specifically warned by law enforcement.  These were not the actions of someone who struggled to make ends meet; these were the calculated actions by someone who wanted to line her pockets and believed herself above the law.

Coates agreed to plead guilty pre-indictment to two separate offenses. Her actions thus far suggest that she has accepted responsibility for her crimes and the Government expects that she will receive a three-level reduction.[1] The Court must consider Coates's acceptance of responsibility and lack of criminal history, but it must consider these factors against the backdrop of the choices she made in committing these crimes.

Despite her current cooperation and acceptance of responsibility, the Government notes that Coates did not initially accept responsibility for her actions when first confronted by law enforcement.  When IRS Special Agents interviewed Coates about the false personal and corporate returns in June 2020, she lied when she falsely told the agents that her personal returns were correct, and she brazenly fabricated stories about all 18 false businesses that she created to receive the fraudulent fuel credits.  Coates provided the agents with false names of the businesses' purported owners, even though she knew that none of them were real and that the businesses did not legitimately

---

[1] The plea agreement for case number 3:23-cr-98 requires the Government to move for a third point if the Court concludes that Coates qualifies for acceptance of responsibility.

operate.  Despite this interview, Coates filed a false personal 2020 tax return, claiming the same false withholdings as her earlier returns, over 6 months *after* her lengthy encounter with IRS criminal investigators.

While there may be rare cases where it can be said that a defendant's offense conduct was in some way representative of a brief and isolated lapse in judgement that deserves significant consideration by the Court, this is not such a case.  Coates's tax fraud spanned over half a decade and required a level of sophistication that was inconsistent with a temporary lapse in judgment.  Coates filed false corporate returns for shell businesses.  Months later, she received refunds checks for these false returns, opened bank accounts in the businesses' names, and converted the money for her own use.  Given the steps involved in this fraud and the intervening time involved, it cannot be said that Coates suffered from a momentary lapse in judgment. Similarly, Coates continued to assist with a scheme to defraud victims of a romance scam despite being put on notice that it was a scam.  If Coates had any argument that she was duped and suffered a lapse in judgment, the USSS agents' notice to her snuffs out such an argument.  Collectively, Coates's continued and calculated actions reveal that she is not someone who deserves the benefit of the doubt with respect to the Court's judgment of her character.

C.    *Specific Deterrence*

A sentence of meaningful incarceration will serve to specifically deter the defendant from continuing to commit these or other serious offenses.  Nothing done to this point has deterred the defendant.  To the contrary, instead of putting a stop to her fraud, the defendant ignored warnings by law enforcement.

USSS agents specifically explained how online romance scams worked and warned Coates that her continued facilitation could subject her to prosecution.  What did Coates do?  She proceeded to act as a money mule for another online scammer.  Similarly, IRS Special Agents interviewed Coates at length about her own tax returns and the fraudulent corporate returns.  Coates filed another personal return claiming the same false withholdings after this interview with IRS criminal investigators.

Coates committed these frauds over a period of years and her interactions with law enforcement did nothing to stop her.  Ultimately, the defendant's behavior to this point shows a danger of recidivism.  A light sentence for someone with the defendant's history of ignoring law enforcement would fail to protect the public for possible future harm.

D.    *General Deterrence*

One of the paramount factors that the Court must consider in imposing sentence under Section 3553(a) is the need for the sentence to "afford adequate

13

deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B).  Although this is true of any case, the need for general deterrence is heightened with criminal tax prosecutions.   Indeed, the Sentencing Commission made a point of discussing the importance of general deterrence to tax crimes. *See* U.S.S.G. § 2T, introductory comment ("Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others form violating the tax laws is a primary consideration underlying these guidelines").  The Fourth Circuit endorsed that reasoning in a tax evasion case, where it vacated a sentence of 18 months' home confinement:

> Given the nature and number of tax evasion offenses as compared to the relatively infrequent prosecution of those offenses, we believe that the Commission's focus on incarceration as a means of third-party deterrence is wise.  The vast majority of such crimes go unpunished, if not undetected. Without a real possibility of imprisonment, there would be little incentive for a wavering would-be evader to choose the straight-and-narrow over the wayward path.

*United States v. Engle*, 592 F.3d 495, 502 (4th Cir. 2010).

The taxation system is a largely voluntary one, meaning that taxpayers are required to honestly self-assess and pay over the taxes that they owe. Criminal enforcement and strict penalties for violations are critical to protecting the integrity of this system.  *See, e.g., United States v. Ture*, 450 F.3d 352, 357 (8th Cir. 2006) ("The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system").  The

IRS's most recent study of tax compliance estimates that only 85% of taxes were voluntarily paid for 2021, leaving a projected tax gap of over $688 billion dollars in uncollected taxes. *See* IRS Publication 5870, "Tax Gap Projections for Tax Year 2021", October 2023, *available at* https://www.irs.gov/pub/irs-pdf/p5870.pdf. This voluntary system of compliance is undermined by lenient sentences because they cause would-be tax fraudsters to believe that they too will face light consequences. Meaningful sentences must be given in cases such as this to forewarn others of the serious consequences for engaging in multi-year tax fraud. "Studies have shown that salient examples of tax-enforcement actions against specific taxpayers, especially those that involve criminal sanctions, have a significant and positive deterrent effect." Joshua D. Blank, In Defense of Individual Tax Privacy, 61 Emory L.J. 265, 321 (2011). These studies and statistics show that a sentence of incarceration for tax fraud sends a strong message that non-compliance is serious and encourages taxpayers to comply with the tax laws.

The need for general deterrence is particularly important in tax fraud cases, which are lucrative, easy to perpetrate, and difficult to detect. *See States v. Zukerman*, 897 F.3d 423, 428 (2d Cir. 2018) (upholding above-Guidelines $10 million fine on 74-year old tax offender who received 70-month within-Guidelines prison term, and finding reasonable district court's rationale for upward variance based on vital need for deterrence to fight tax crimes); *United*

States v. Heffernan, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."); see also United States v. Hassebrock, 663 F.3d 906, 922 (7th Cir. 2011) (affirming as reasonable a within-Guidelines 32-month sentence for a tax evader when the district court explained that "a sentence of probation would not promote respect for the law, but encourage people to flaunt it"). Thus, in order to provide adequate general deterrence, sentences in criminal tax cases must be substantial.

A sentence of probation or a period of home confinement with monitoring would *entirely* fail to serve the goal of general deterrence. The message that would be sent to the community by such a lenient sentence is that tax fraud will be tolerated and that those who engage in it will not be held accountable. Such a sentence would provide a would-be tax cheat every incentive to perpetrate a tax fraud scheme—the reward is high, the chance of being caught and prosecuted is low, and the punishment in the unlikely event of a successful prosecution is negligible. The Government respectfully submits that this is *not* the message that this Court should send to the public through its sentence of Coates.  The need for general deterrence, as specifically called for in 18 U.S.C. § 3553(a)(2)(B), demands more.

16

**IV.    Conclusion**

For the reasons stated, a sentence within the Guidelines range of 33 to 41 months in prison, restitution of $186,288 to the IRS, and restitution of $229,376.26 to the victims of her wire fraud provide an appropriate and just overall sentence in this case.

This, the 16th day of January, 2024.

ROGER B. HANDBERG
United States Attorney

DAVID A. HUBBERT
Deputy Assistant Attorney General
U.S. Department of Justice
Tax Division

/s/ *Kevin Schneider*
Kevin Schneider
Wilson Stamm
Trial Attorneys, Tax Division
150 M Street NE
Washington, DC 20004

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2024, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing ("NEF") to all counsel of record.


/s/ *Kevin Schneider*
Kevin Schneider
Trial Attorney, Tax Division
150 M Street NE
Washington, DC 20004